**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 6:12-cv-00659 (LED) |
| RACKSPACE US, INC., ET AL., | § § | JURY TRIAL DEMANDED |
| | § § | |
| Defendants. | § § | |
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 6:12-cv-00661 (LED) |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | § § § | JURY TRIAL DEMANDED |
| Defendant. | § § § | |

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S MOTION**
**TO LIFT THE STAY PENDING *INTER PARTES* REVIEW AND**
**FOR ENTRY OF A REVISED DOCKET CONTROL ORDER**

Plaintiffs PersonalWeb Technologies, LLC and Level 3 Communications, LLC ("PersonalWeb" or "Plaintiffs") seek an order lifting the current stay of these two actions and directing the parties to propose a revised Docket Control Order setting these cases for a *Markman* hearing on February 16, 2015 and trial on May 16, 2016.

1

## I.       INTRODUCTION

PersonalWeb instituted these two actions against Rackspace and GitHub (case no. 12-cv-00659) and IBM (case no. 12-cv-00661) alleging infringement of five related patents (collectively, the "True Name" patents)—U.S. Patent Nos. 5,978,791 ("the '791 patent"), 6,415,280 ("the '280 patent"), 6,928,442 ("the '442 patent"), 7,802,310 ("the '310 patent"), and 8,099,420 ("the '420 patent").  Defendant Rackspace timely sought *inter partes* review ("IPR") of each claim at issue in these cases (but neither GitHub or IBM filed IPRs).  Eventually, the Patent Office's Patent Trial and Appeal Board ("Board") instituted the Rackspace IPR on each asserted claim.

Besides the Rackspace IPR, the Board previously had instituted other IPRs on a small subset of claims at issue in these cases—including an IPR initiated by EMC Corporation.  In the EMC IPR, the Board issued a final decision invalidating the asserted claims, and PersonalWeb filed an appeal, which remains pending.  While the EMC appeal does not address most of the claims at issue in these cases, the parties recognized that the outcome of the EMC appeal could affect the Board's ultimate decision in the Rackspace IPR, which would impact these cases.  Accordingly, the parties agreed to stay these cases until completion of the EMC appeal, and this Court entered an Order granting the stay on July 14, 2014.

Circumstances have now changed in a way that provides good cause for lifting the stay in these cases.  PersonalWeb and Rackspace have settled their dispute and Rackspace has been dismissed from the litigation.  Separately, the Board has terminated the Rackspace IPRs.  Accordingly, regardless of the outcome of the EMC appeal, the decision will have no impact on the majority of claims remaining against GitHub and IBM.  It is too late for either Defendant to seek IPRs on these claims: the validity of most claims asserted against GitHub and IBM can only

2

be adjudicated in this Court.  In short, the EMC appeal can no longer impact most claims at issue in these cases, or affect other IPRs proceedings concerning most claims at issue in these cases. Thus, PersonalWeb seeks an order lifting the stay in these actions and directing the parties to propose a revised Docket Control Order with the new trial and *Markman* dates suggested in this motion.

## II.   BACKGROUND

Between December 2011 and September 2012, PersonalWeb filed fourteen cases alleging infringement of ten True Name patents (although PersonalWeb did not assert every patent in each case).  Nearly all defendants moved to transfer venue.  This Court transferred some of the cases to the Northern District of California, and kept others in this Court, including the Rackspace and IBM cases.  Both cases were consolidated for purposes of scheduling and discovery.  (Notice of Agreement, Aug. 25, 2013, ECF No. 19)[1]  While PersonalWeb's cases against GitHub and IBM remain pending, PersonalWeb recently resolved its dispute with Rackspace, and Rackspace has been dismissed with prejudice.  (Order Dismissing Rackspace, Oct. 20, 2014, ECF No. 64.)

Between 2012 and 2013, the Board instituted IPRs of the True Name patents filed by three separate defendants as follows:

- On December 15, 2012, EMC Corp. and VMWare, Inc. ("EMC"), defendants in a case transferred to the Northern District of California, filed IPR petitions challenging validity of 21 claims in six different True Name patents ("EMC's IPR").  The Board granted the petitions on May 17, 2013, case nos. IPR2013-

---

[1] Citations to court documents refer to docket entries in case no. 6:12-cv-00659 (LED) unless otherwise indicated.

00082, *et al*.  Final decisions invalidating each challenged claim were issued on May 15, 2014, and those decisions are now on appeal at the U.S. Court of Appeals for the Federal Circuit, case nos. 14-1603, *et al*.  A briefing schedule has been set, and the opening brief was filed on November 7, 2014.  An oral argument date has not been scheduled.

- On September 18, 2013, Apple, Inc. ("Apple"), a defendant in another case transferred to the Northern District of California, filed an IPR petition challenging validity of four claims in one True Name patent—the '310 patent ("Apple's IPR").  The Board granted Apple's petition on March 26, 2014, case no. IPR2013-00596.  A final decision has yet to be rendered.

- On October 10, 2013, Rackspace filed IPR petitions challenging validity of 29 claims in five True Name patents—collectively covering each claim asserted against Rackspace, GitHub, and IBM in these cases ("the Rackspace IPRs").  The Board granted Rackspace's petitions on April 15, 2014, case nos. IPR2014-00057 *et al*.

After the Board instituted the Rackspace IPRs, IBM moved to stay the case against it pending resolution of the Rackspace IPRs.  (Mot. to Stay, Dec. 6, 2013, case no. 12-cv-661 (LED), ECF No. 37.)  Both Rackspace and GitHub moved to join the IBM motion, seeking to stay the cases against them pending resolution of the Rackspace IPRs.  (Mots. for Joinder, Dec. 13, 2013, ECF No. 36 and May 6, 2014, ECF No. 57.)  PersonalWeb initially opposed both motions.  However, once the Board issued its decision in the EMC IPRs, PersonalWeb reached a compromise with IBM, Rackspace and Github on the requested stays:  PersonalWeb agreed to jointly move for a stay with IBM, Rackspace and GitHub but only agreed to stay the cases until

4

the conclusion of the EMC appeal.  Although the EMC appeal involved only a small subset of the claims asserted against IBM, Rackspace, and GitHub, PersonalWeb recognized that the outcome of the EMC appeal could impact the resolution of the Rackspace IPRs (which covered all asserted claims).  Thus, judicial and party economy warranted a finite stay to determine how the Rackspace IPRs would be affected by the EMC appeal.  On July 14, 2014, this Court granted the parties joint stay motion.  (Order Granting Stay, ECF No. 62.)

On October 16, 2014, PersonalWeb stipulated to a dismissal of its litigation claims against Rackspace with prejudice.  On the same day, PersonalWeb and Rackspace filed a joint motion with the Board to terminate Rackspace's IPRs.  The Board granted the motion and terminated Rackspace's five IPRs on October 28, 2014.  (*See* Judgment, Termination of Proceeding after Institution, IPR2014-00057 (PTAB Oct. 28, 2014), attached as Ex. A)  Accordingly, the outcome of the EMC appeal can no longer affect the Rackspace IPRs.  Further, as shown below, only nine of the 33 claims presently asserted against IBM and GitHub remain the subject of *any* IPR, including the EMC appeal:

| PersonalWeb's Patents / Asserted Claims Against IBM and GitHub | Subject to IPR |
|---|---|
| '791 patent (claims 1-3, 29, and 35) | Subject to EMC's IPR (all relevant claims). |
| '310 patent (claims 1, 2, 5, 7, 8, 10, 11, 12, 14, 16, 17, 18, 19, 24, 32, 81, and 86) | Subject to Apple's IPR (only as to claims 24, 32, 81, and 86); all other claims not subject to IPR. |

| '280 patent<br>(claims 1 and 10) | Not subject to IPR. |
|---|---|
| '442 patent<br>(claims 1, 2, 4, 7, 23, 27, 28, and 30) | Not subject to IPR. |
| '420 patent<br>(claim 166) | Not subject to IPR. |

As to the 24 claims at issue in these cases that are not subject of any IPR, the deadline for IBM or GitHub to challenge those claims in an IPR has expired.  Thus, the validity of those 24 claims must be adjudicated in this Court.  As to the remaining nine claims, PersonalWeb will not assert the five claims on appeal against IBM and GitHub in the event the Board's invalidity decision is upheld, and will not assert the four claims that are the subject of the Apple IPR in the event the Board invalidates those claims, and that decision is upheld in any appeal.

## III.    THE CHANGED CIRCUMSTANCES WARRANT LIFTING THE STAY

### A.    Applicable Legal Standard

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Lennon Image Techs., LLC v. Macy's Retail Holdings, Inc.*, No. 2:13-cv-00239-JRG, 2014 U.S. Dist. LEXIS 130645, at *8-*9 (E.D. Tex. Sept. 17, 2014) (internal quotation marks and citation omitted).  This inherent power includes the power to lift stays once entered.  *Data Treasury Corp. v. Wells Fargo & Co.*, No. 05-cv-291 (DF), 2008 U.S. Dist. LEXIS 123565, at *82 (E.D. Tex. March 11, 2008).

Management of the court's docket requires "the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55

6

(1936).  In determining if a stay is appropriate, courts consider three factors: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.  *Lennon Image Techs*, 2014 U.S. Dist. LEXIS 130645, at *8.  "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on those factors."  *Id.* (internal quotation marks omitted).  These same factors apply to motions to lift stays that have been entered.  *Data Treasury Corp.,* 2008 U.S. Dist. LEXIS 123565, at *82 (E.D. Tex. March 11, 2008).

> **B.      The Stay Is No Longer Warranted Because a Substantial Number of the Asserted Claims Are Not Subject to the Rackspace IPR and Must Be Adjudicated in This Court**

The factors that earlier warranted a stay in these cases no longer apply.

*First*, termination of the Rackspace IPRs, combined with Defendants' inability to challenge 24 of the claims at issue in these cases in a new IPR, warrant a resumption of these cases.  Infringement and validity of those claims must be adjudicated in this Court regardless of any IPR or appeal.  While nine of the claims currently asserted against GitHub and IBM are either on appeal or subject to the Apple IPR, if those claims are finally invalidated, PersonalWeb simply will not assert them at trial.  Under these changed circumstances, PersonalWeb's "interest in the timely enforcement of its patent right" should be restored.  *Lennon Image Techs*, 2014 U.S. Dist. LEXIS 130645, at *8 (internal quotation marks omitted).

Indeed, maintaining the stay under these changed circumstances when only nine claims are the subject of proceedings outside this Court would be prejudicial and provide a clear tactical disadvantage to PersonalWeb.  Briefing on the EMC appeal will not conclude until next year, and a decision may not be reached until the end of 2015. Likewise, Apple's IPR, affecting only

7

four claims, may still take years to resolve.  Maintaining the stay for a limited number of claims at issue "for [what could be an] indefinite period of time would essentially remove the Court's discretion regarding control of its own docket and hold the Court in limbo awaiting determinations that could take years to reach an absolute resolution." *Id.* at *9.  Thus, factor one favors lifting the stay.

*Second*, any "simplification of issues" that could result from maintaining the stay will be minimal at best because PersonalWeb continues to assert 24 claims that will not be affected by EMC's and Apple's IPRs.  IBM and GitHub can no longer challenge those claims in an IPR.  As to the remaining nine claims, "the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case on hold for an indefinite and lengthy period of time." *Id.* at *10.  In other words, if the Federal Circuit affirms the Board's decision in EMC's IPR, PersonalWeb simply will not assert those claims at trial.

More significantly, maintaining the stay in these cases "would invite parties to unilaterally derail timely patent case resolution by seeking" IPRs for some but not all relevant claims in the suit.  *Id.* (internal quotation marks omitted).  Such a scenario would allow an IPR that is marginal in scope to hold hostage any remaining patent claims, which would otherwise be enforceable.  This Court has found such circumstances unacceptable.  *Invensys Sys. v. Emerson Elec. Co.*, No. 12-cv-00799, 2014 U.S. Dist. LEXIS 128454, at *10 (E.D. Texas July 25, 2014) (denying a motion to stay based in part on the narrow scope of the IPR).  Accordingly, this factor weighs in favor of lifting the stay.

*Third*, the case progress factor weighs in favor of lifting the stay.  Prior to the Court staying these actions on July 14, 2014, the parties exchanged documents, exchanged initial disclosures, and the deadline for serving invalidity contentions under P.R. 3-3 was fast-

8

approaching.    PersonalWeb also served complete P.R. 3-1 disclosures (infringement contentions), including supplemental contentions with source code citations for all accused products for which source code was provided.   Analyzing source code is not inconsequential; rather, it is a substantive and arduous undertaking during discovery in all computer-related patent cases.   *See Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385, at *15 (D. Del. Dec. 13, 2010) (characterizing access to defendants' source code as "substantial discovery").   Finally, the Court had the following dates scheduled: (1) the *Markman* hearing, October 16, 2014; (2) deadline for summary judgment motions, April 17, 2015, and (3) the trial date, January 11, 2016.   Because these cases meaningfully advanced from their initial stages, this last factor weighs in favor of lifting the stay.   *See Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, No. 08-cv-164, 2009 U.S. Dist. LEXIS 131921, at *21 (E.D. Tex. Feb. 20, 2009) (finding stay was not favored where initial disclosures were exchanged and infringement contentions were served: "It is disingenuous for Defendants to pretend that substantive discovery is not well underway, unless they have been deliberately withholding information.").

Fourth, neither GitHub nor IBM can show that there would be "a clear case of hardship or inequity" if this Court lifts the stay.   *Landis*, 299 U.S. at 255.   Defense costs alone do not constitute hardship.   *Sunbeam Prods. v. Hamilton Beach Brands, Inc.*, No. 09-cv-791, 2010 U.S. Dist. LEXIS 45654, at *14 (E.D. Va. May 7, 2010) (citation omitted).   Nor will Defendants suffer from the collateral consequence of added costs as a result of parallel litigation (because GitHub and IBM are not parties to the remaining IPRs).   Accordingly, the stay should be lifted in these actions.

## IV.     THE PARTIES SHOULD BE ORDERED TO PROPOSE A REVISED DOCKET CONTROL ORDER

If the Court grants PersonalWeb's motion, the Court should further order the parties to submit, within one week, a new proposed Docket Control Order containing the dates for trial, pretrial conference and *Markman* hearing set forth below.[2]   These dates are consistent with the dates set by this Court prior to entering the stay and reflect the approximately four-month time period that these cases will have been stayed:

| Old Date | New Date | Event |
|---|---|---|
| January 11, 2016 | May 16, 2016 | Jury Trial |
| December 17, 2015 | April 11, 2016 | Pretrial Conference |
| October 16, 2014 | February 16, 2015 | *Markman* Hearing |

## V.      CONCLUSION

For the foregoing reasons, PersonalWeb respectfully requests the Court lift the stay and require the parties to propose a revised Docket Control Order within one week from the Court's order.

DATED:  November 10, 2014                         .         Respectfully submitted,


                                                            */s/ Lawrence M. Hadley*
                                                            **McKOOL SMITH, P.C.**
                                                            Samuel F. Baxter
                                                            *Lead Attorney*
                                                            Texas State Bar No. 01938000

---

[2] PersonalWeb does not expect the *Markman* proceeding to warrant significant judicial or party resources.  In a related case, this Court issued an opinion construing seventeen terms and phrases that will either directly or indirectly affect the construction of terms here.  (*See, e.g.*, Mem. Op. & Order, Aug. 5, 2013, case no. 11-cv-00655 (LED), ECF No. 103.)

sbaxter@mckoolsmith.com
McKool Smith, P.C.
104 East Houston Street, Suite 300
Marshall, Texas  75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

**McKOOL SMITH HENNIGAN, P.C.**
Lawrence M. Hadley
California State Bar No. 157728
lhadley@mckoolsmithhennigan.com
865 South Figueroa Street, Suite 2900
Los Angeles, CA  90017
Telephone:  (213) 694-1200
Telecopier:  (213) 694-1234

<u>**CERTIFICATE OF CONFERENCE**</u>

On November 10, 2014, Lawrence Milton Hadley, counsel for PersonalWeb, conferred

with Ryan Hubbard of Kirkland & Ellis LLP and Ryan Kent of Durie Tangri LLP, counsels for

IBM and GitHub, respectively, with regard to this motion.  No agreement could be reached.


/s/ *Lawrence M. Hadley*
Lawrence M. Hadley

11

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on November 10, 2014.

/s/   Sam Baxter
Sam Baxter

12