IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC AND LEVEL 3 COMMUNICATIONS, LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>RACKSPACE US, INC., ET AL.,<br><br>        Defendants. | Civil Action No. 6:12-cv-00659 (LED)<br><br>JURY TRIAL REQUESTED |
| PERSONALWEB TECHNOLOGIES, LLC AND LEVEL 3 COMMUNICATIONS, LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant. | Civil Action No. 6:12-cv-00661 (LED)<br><br>JURY TRIAL REQUESTED |

**IBM AND GITHUB'S SUR-REPLY TO PERSONALWEB'S REPLY
TO THE MOTION TO LIFT THE STAY PENDING *INTER PARTES* REVIEW**

PersonalWeb's wants to distract from the fact that it both proposed and agreed to the stay based on the EMC Appeal, not the Rackspace IPRs. PersonalWeb had ample opportunity to condition the stay based on the Rackspace IPRs and refused to do so. The real "changed circumstance" is simply that PersonalWeb finds itself without a case to litigate at the moment and wants to rouse the IBM and GitHub litigations. But PersonalWeb agreed to stay these litigations pending circumstances that are entirely unchanged. The Court should not indulge in PersonalWeb's games and the stay should continue.

**I.     BACKGROUND**

Instead of admitting that the stay of litigation was based solely on the pendency of the EMC Appeal, PersonalWeb tries to circumvent its express agreement by relying on the settlement of the separate Rackspace IPRs. PersonalWeb now claims that "the outcome of the

[EMC] appeal would [not] affect this litigation directly" were it not for the pending Rackspace IPRs. (6:12-cv-00661, Dkt. 56 at 1.) PersonalWeb tries to suggest that the Rackspace IPRs were the real, undisclosed reason the parties agreed to a stay and that because the Rackspace IPRs are now terminated, so too should the stay. (*Id.* at 1-2.) But if true, why did PersonalWeb refuse to condition the stay based on the Rackspace IPRs in the first place?

The parties conditioned the stay "pending the outcome of the [EMC] IPR Appeal so that the parties will know which claims PersonalWeb is able to assert at trial in these cases" as the joint stay clearly states. (6:12-cv-00661, Dkt. 52 at 1.) The EMC Appeal is still pending. Unlike the Rackspace IPRs, it has not been terminated. It is still true that the outcome of the EMC Appeal will affect which claims PersonalWeb is able to assert at trial in these cases. PersonalWeb's assertion that the EMC Appeal will not directly affect this litigation is simply untrue. The outcome of the EMC Appeal will not only determine whether PersonalWeb can assert the specific claims that are at issue in the EMC Appeal, but whether PersonalWeb will attempt to assert similar claims containing terms that have been construed to have the *same* meanings and that cover the *same* technology as those at issue in the EMC Appeal. Circumstances have not changed other than PersonalWeb's renewed desire to march forward with litigation.

## II.     ARGUMENT

### A.     PersonalWeb Will Not Be Prejudiced By the Continuing Stay.

PersonalWeb tries to argue that it "would be prejudiced by continuing the stay where the vast majority of asserted claims are no longer subject to an IPR[.]" (6:12-cv-00661, Dkt. 56 at 2.) This makes no sense. A party cannot claim prejudice as a result of being held to its own express agreement. PersonalWeb had the opportunity, but did not agree, to stay the litigations while the vast majority of asserted claims were subject to an IPR. Instead, PersonalWeb chose to stay the IBM and GitHub litigations pending the EMC Appeal. (6:12-cv-00661, Dkt. 52 at 1.)

PersonalWeb overlooks the most important factor in *Cheetah Omni, LLC v. Level 3 Communications, Inc. & Infinera Corp.*, No. 5:06-cv-00101, Dkt. 76 at 5 (E.D. Tex. Apr. 15,

2

2010) and Dkt. 82 at 5-6 (E.D. Tex. Aug. 24, 2010).  The court found that the plaintiff would not suffer any prejudice by the stay continuing because "the parties stipulated to the present stay" and *that factor alone* justified maintaining the stay.  5:06-cv-00101, Dkt. 82 at 5-6.  The same is true for PersonalWeb in this litigation.

If PersonalWeb actually thought that the only reason the EMC Appeal had any effect on this litigation was via its effect on the Rackspace IPRs, then PersonalWeb could have conditioned the stay on pendency of both the EMC Appeal and the Rackspace IPRs.  The Court in *Cheetah Omni* pointed out that "[p]laintiff had the opportunity to propose or amend language of the stay such that certain restrictions could be built into the stay."  (6:12-cv-00661, Dkt. 55, Ex. B at 5.)  PersonalWeb could have done just the same.  At the time of negotiating the stipulated stay, PersonalWeb could have foreseen a scenario in which the Rackspace IPRs were resolved while the EMC Appeal continued—just as what occurred—and could have included conditions for such a scenario in the stipulated stay.  Instead, PersonalWeb chose to wholly ignore the Rackspace IPRs in crafting the language of the agreed stay.

PersonalWeb also wants the Court to believe that it is "telling" that neither IBM nor GitHub offered to stipulate to the validity of the claims at issue in the EMC Appeal if those claims are ultimately upheld, and that this would "disadvantage" PersonalWeb.  (6:12-cv-00661, Dkt. 56 at 5.)  But PersonalWeb had the opportunity to propose such a condition on the stay.  It did not and IBM and GitHub did not propose such a stipulation either.  IBM and GitHub should not be held to such "after the fact" considerations that PersonalWeb now wishes were included in the agreed stay, particularly where PersonalWeb is attempting to drag the parties through litigation on multiple invalid patent claims.

      **B.**      **Allowing the Stay to Continue Will Simplify the Issues for Trial.**

PersonalWeb claims that the EMC Appeal "can no longer have a simplifying effect on these cases." (6:12-cv-00661, Dkt. 56 at 3.)  This is simply untrue.  Although only 10 of the 34 claims at issue in the EMC Appeal are asserted in either the IBM or GitHub litigations, those 10

claims are the most frequently asserted claims against IBM's and GitHub's accused products and will be the most relevant for infringement purposes. (6:12-cv-00661, Dkt. 55 at 7-8.) Unlike the situation in *Invensys*, these claims have already been found invalid by the Patent Office, and PersonalWeb agreed to stay the case pending resolution of the Federal Circuit's decision regarding their invalidity. *See Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-cv-00799, 2014 WL 4477393, at *2-3 (E.D. Tex. July 25, 2014).

PersonalWeb states that "with the termination of the Rackspace IPRs, the disposition of those limited number of claims [in the EMC Appeal] can no longer have any effect on Patent Office adjudications of the remainder of PersonalWeb's asserted claims." (6:12-cv-00661, Dkt. 56 at 4.) But the disposition of the claims in the EMC Appeal can still have a direct effect on this litigation—just as the parties recognized in the language of the agreed stay: "the cases . . . should be stayed pending the outcome of the IPR Appeal so that the parties will know which claims PersonalWeb is able to assert at trial in these cases." (6:12-cv-00661, Dkt. 52 at 1.) As PersonalWeb recognized during negotiation of the agreed stay, "the EMC IPRs will give the parties . . . guidance to know how to continue with the litigation." (6:12-cv-00661, Dkt. 55 at Ex. A.) While PersonalWeb tries to claim that "any ruling on the claims of the '791 patent will lack any relevance to the remaining asserted claims [in the other patents]," it ignores the fact that this Court has recognized the significant overlap in the claims and terms used across all these asserted patents that all stem from the same patent family. (6:12-cv-00661, Dkt. 56 at 4.) This Court has construed claims appearing in multiple patents as having the same meanings. (*See* 6:12-cv-00661, Dkt. 55 at 6.) If the Federal Circuit upholds the invalidity of the asserted '791 claims at issue in the EMC Appeal, it will impact not only the viability of the most widely

asserted claims in this litigation, but several other claims containing terms construed to have the same meanings and covering the same technology.

### C.     These Cases Have Not Meaningfully Advanced.

There is no change in the advancement of the case.  The status of these cases is precisely the same as when PersonalWeb approached Defendants regarding the proposed stay.  Discovery was just underway and no depositions had been taken.  The parties were just about to embark in the *Markman* process.  They exchanged proposed terms but not proposed constructions.  And although PersonalWeb claims that the Court's constructions from a related case will conserve resources during *Markman* here, PersonalWeb ignores the fact that the parties' exchange of proposed terms included terms that were not previously construed by the Court.  There is much work ahead for the parties in these litigations and trial is more than 18 months away.

### III.    CONCLUSION

The current stay should continue.

Dated: December 18, 2014

Respectfully submitted,

 */s/ Ryan M. Hubbard*

Kenneth R. Adamo
Texas State Bar No. 00846960
kradamo@kirkland.com
Brent P. Ray
Illinois State Bar No. 6291911
bpray@kirkland.com
Ryan M. Hubbard
Illinois State Bar No. 6296777
ryan.hubbard@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle Dr.
Chicago, Illinois 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

*Attorneys for International Business Machines Corporation*

Respectfully submitted,

 */s/ Ryan M. Kent*

Ryan M. Kent
DURIE TANGRI LLP
217 Ledesdorff Street
San Francisco, CA 94111-3007
(415) 362-6666

*Counsel for Defendant GitHub, Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document *via* the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 18th day of December, 2014.

*/s/ Ryan M. Hubbard*
Ryan M. Hubbard
