IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RACKSPACE US, INC., ET AL.,<br><br><br><br>Defendants. | Civil Action No. 6:12-cv-00659-JRG<br><br>JURY TRIAL DEMANDED |
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION.<br><br>Defendant. | Civil Action No. 6:12-cv-00661-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF PERSONALWEB TECHNOLOGIES, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. OVERVIEW OF THE TRUE NAME PATENTS.................................................................1

III. CLAIM CONSTRUCTION ANALYSIS ..............................................................................2

    A. Data item ...................................................................................................................2

    B. Given function of the data / Applying a function to the contents of the corresponding file .........................................................................................................5

    C. Licensed / unlicensed .................................................................................................7

    D. Authorized / unauthorized / authorization .................................................................8

    E. File name..................................................................................................................10

    F. Substantially unique value .......................................................................................13

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMC Software, Inc. v. ServiceNow, Inc.*,
  2015 U.S. Dist. LEXIS 106789 (E.D. Tex. Aug. 13, 2015) ...................................................13

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
  2015 U.S. Dist. LEXIS 34667 (E.D. Tex. Mar. 20, 2015)..........................................................6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  2015 U.S. Dist. LEXIS 151310 (E.D. Tex. Nov. 7, 2015) .........................................................3

*L.C. Eldridge Sales Co. v. Azen Mfg. PTE*,
  2013 U.S. Dist. LEXIS 73358 (E.D. Tex. May 23, 2013)..................................................6, 7, 8

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
  2012 U.S. Dist. LEXIS 109760 (E.D. Tex. Aug. 6, 2012) ...........................................9, 11, 13

*Maurice Mitchell Innovations, L.P. v. Intel Corp.*,
  2006 U.S. Dist. LEXIS 41453 (E.D. Tex. June 21, 2006)..........................................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014)..............................................................................................................11

*RMail Ltd. v. Amazon.com, Inc.*,
  2013 U.S. Dist. LEXIS 34912 (E.D. Tex. Mar. 11, 2013).........................................................3

*Solocron Media, LLC v. Verizon Communs. Inc.*,
  2015 U.S. Dist. LEXIS 26681 (E.D. Tex. Mar. 4, 2015).........................................................11

**Other Authorities**

U.S. Patent No. 5,978,791..................................................................................................................1

U.S. Patent Nos. 6,415,280, 6,928,442, 7,802,310, and 8,099,420 ...................................................1

## I.   INTRODUCTION

PersonalWeb's asserted patents[1] (the "True Name" patents) claim inventions directed to various methods of identifying data (such as files or portions of files) to improve the speed and efficiency of accessing data, increase effective storage capacity of data, and reduce bandwidth needs in transferring data.

## II.   OVERVIEW OF THE TRUE NAME PATENTS

On April 11, 1995, inventors David Farber and Ronald Lachman filed a patent application directed toward the use of "substantially unique identifiers" to identify and thereafter to track, manage, store, and account for data. Farber and Lachman foresaw the then-coming world of rapidly expanding and globally distributed data and networks, and realized that it would be important to have more efficient and reliable ways of identifying data for accessing, storing, and transferring data. Their solution was elegant: identify data in the system in a manner that is independent of subjective names (such as user-given file names, file locations, or other metadata) and instead is based on the data itself. That way, data could be identified across multiple, complex networks and file systems, independent of different naming practices or different languages, and independent of the different ways people may choose to name, identify, or store their data. Farber and Lachman developed and claimed various techniques for using such content-based identifiers to rapidly access and efficiently store and transfer data.

---

[1] The asserted patents include U.S. Patent Nos. 6,415,280, 6,928,442, 7,802,310, and 8,099,420. *See* Declaration of Phillip J. Lee, Exs. A-D. Most references to the specification will be to U.S. Patent No. 5,978,791 ("the '791 patent), Lee Decl., Ex. E, the first patent to issue from the patent family of the asserted patents. Although the '791 patent is no longer asserted, PersonalWeb cites to the '791 patent because its specification is identical to the specifications of the asserted patents and because the Court cited to the '791 patent specification when previously construing terms from the asserted patents. *See* Lee Decl., Ex. F, 2013 08 05 *Markman* Order, ECF. No. 103, 11-cv-00655-LED. To the extent relevant, PersonalWeb will cite to the pertinent asserted patent in addition to the '791 patent.

As explained in the patents-in-suit, content-based identifiers are generated by applying a function, such as a message digest or other complex hash function, to data in order to calculate a value that identifies that data for specific purposes within the system. For example, these values may be used as a key that maps to storage locations of the corresponding data so that the data can be accessed for such purposes as being retrieved, deleted, or de-duplicated. As another example, these values may be used to determine whether particular data is present at a given location to avoid transferring it to that location if already there.

The patents also teach that a set of data may be divided into parts, each part having its own identity, so that the data can be accessed via the identities of its respective parts. Using this invention, data no longer needs to be stored or transmitted monolithically. Identical sets of data (or parts thereof) need not be stored or transmitted more than needed.

## III. CLAIM CONSTRUCTION ANALYSIS[2]

### A. Data item

| Claim Term | PersonalWeb | Defendants[3] |
|---|---|---|
| "data item" | Sequence of bits. | A sequence of bits distinct from contextual information. |
| Court's Prior Construction[4] | | Sequence of bits |

PersonalWeb's proposed construction for "data item" is the definition provided by the specification:

> In general, the terms "data" and "data item" as used *herein refer to sequences of bits*. Thus a data item may be the contents of a file, a portion

---

[2] The terms for which the parties have reached agreed constructions are attached as Lee Decl., Ex. G. The disputed terms, with the parties' proposed constructions, are attached as Lee Decl., Ex. H.

[3] To the extent the disputed term is applicable to both IBM (12-cv-661) and GitHub (12-cv-659), PersonalWeb will refer to IBM and GitHub collectively as Defendants. To the extent the disputed term is applicable only to IBM or GitHub, PersonalWeb will refer to IBM or GitHub individually.

[4] *See* Lee Decl., Ex. F, 2013 08 05 *Markman* Order at 10.

> of a file, a page in memory, an object in an object-oriented program, a digital message, a digital scanned image, a part of a video or audio signal, ***or any other entity which can be represented by a sequence of bits***.

'791, 1:54-60 (emphases added); *see also id.*, 1:65-2:3. The patentee expressly provided a non-limiting list of examples and made clear that any digital information represented by a sequence of bits qualifies as a "data item." Where, as here, the inventor has acted as his own lexicographer, the inventor's lexicography governs. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* 2015 U.S. Dist. LEXIS 151310, *70 (E.D. Tex. Nov. 7, 2015) ("Here, the passage at '671 Patent 1:28-35 acts as a clear statement of lexicography: 'The term 'idle screen' refers to . . . .'"); *see also RMail Ltd. v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 34912, *143 (E.D. Tex. Mar. 11, 2013) ("These statements by the patentee rise to the level of a 'reasonably clear' lexicography defining 'dialog' in the context of 'mail transport protocol dialog' as being data that includes a list of commands and responses exchanged during transmission of a message."). Indeed, Judge Davis in his 2013 Claim Construction Order concerning this term held the same. *See* Lee Decl., Ex. F, 2013 08 05 *Markman* Order at 9 ("The specification plainly and unambiguously states that a data item is a sequence of bits.").) The claim language does not detract from the patentee's lexicography. Claim 1 of the '280 patent is representative:

> In a system in which a set of data files are distributed across a network of servers, at least some of the data files being cached versions of data files from a source server, wherein the source server is distinct from the servers in the network, a content delivery method comprising:
>
> determining a data identifier for a particular data file on the source server, the data identifier being determined using a given function of the data, wherein said data used by the given function to determine the data identifier comprises the contents of the particular data file; and
>
> responsive to a request for the particular data file, the request including at least the data identifier of the particular data file, providing the particular data file from a given one of the servers of the network of servers, said providing being based on the data identifier of the requested ***data item***.

'280, Claim 1 (emphasis added).  Accordingly, the Court should adopt PersonalWeb's proposed construction.

Defendants propose adding "distinct from contextual information" to the definition the patentee provided in the specification, but the patentee's lexicography does not provide for such a limitation.  Specifically, the specification refers to "context" when discussing *naming or identifying* "data items," and not in relation to the "data item" itself.  *See, e.g.*, '791, 1:65-2:3 ("In all of the prior data processing systems the *names or identifiers* provided to identify data items (the data items being files, directories, records in the database, objects in object-oriented programming, locations in memory or on a physical device, or the like) are always defined relative to a specific context.") (emphasis added); *id.*, 3:30-35 ("In view of the above and other problems with prior art systems, it is therefore desirable to have a mechanism which allows each processor in a multiprocessor system to determine a common and substantially unique *identifier* for a data item, using only the data in the data item and not relying on any sort of context.") (emphasis added); *id.*, 3:15-20 ("It is further desirable to determine whether two instances of a data item are in fact the same data item, and to *perform various other systems' functions and applications* on data items without relying on any context information or properties of the data item.") (emphasis added); *id.*, 34:8-11 ("Since a data item is *identified by* the data in the item, without regard for the context of the data, the problems of inconsistent naming in a DP system are overcome.") (emphasis added).

Nor does the claim language support deviating from the patentees' definition.  In many claims, "context" pertains to the "name" of the "data item," and not the "data item" itself: "information about a contextual name of the particular data item," '310, claim 8.

Finally, there is nothing in the specification or claims that precludes so-called "contextual information" from being a "data item" itself. Certainly, even contextual information is made up of bit sequences. Thus, Defendants' proposed construction requiring "sequence of bits" to be "distinct from contextual information," not only changes the inventors' lexicography in a way that conflicts with the specification and claim language, it is inherently ambiguous. PersonalWeb's construction should be adopted.

### B. Given function of the data / Applying a function to the contents of the corresponding file

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "Given function of the data" | Plain and ordinary. No construction necessary. | Computation where the input is all of the data in the data file, and only the data in the data file. |

| Claim Term | PersonalWeb | IBM |
|---|---|---|
| "Applying a function to the contents of the corresponding file" | Plain and ordinary. No construction necessary. | Performing a computation where the input is all of the data in the file, and only the data in the file. |

No construction is necessary for the phrases "given function of the data" and "applying a function to the contents of the corresponding file." These phrases have a plain and ordinary meaning readily understood by a jury. This is particularly the case because the surrounding claim language of the phrases at issue makes them entirely unambiguous. For example, claim 1 of the '280 patent recites, in part: "determining a data identifier for a particular data file on the source server, the data identifier being determined using a given function of the data, wherein said data used by the given function to determine the data identifier comprises the contents of the particular data." There is no doubt that the "function" is applied to "data" that includes "the contents of the particular data" and produces a "data identifier." Likewise, claim 23 of the '442 patent recites, in part: "each of said file names having been determined, at least in part, by

5

applying a function to the contents of the corresponding file." Again, the language is clear, using plain and ordinary words, and is easily understood by the jury. Because there is no ambiguity as to "given function of the data" and "applying a function to the contents of the corresponding file" in the context of the surrounding claim language, no construction is necessary. *See ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 34667, *63 (E.D. Tex. Mar. 20, 2015) ("[T]he surrounding claim language addresses the meaning of the disputed terms such that no construction is necessary.").

Defendants' proposed construction conflicts with the claim language. Claim 1 of the '280 patent recites: "data used by the given function to determine the data identifier *comprises* the contents of the particular data." The claim language thus involving the data used by the given function may include "contents of the particular data," but may not necessarily be limited to only "contents of the particular data" because the patentee's use of "comprises" results in an open-ended limitation. *See Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 2006 U.S. Dist. LEXIS 41453, *24 (E.D. Tex. June 21, 2006) ("A drafter uses the term 'comprising to mean 'I claim at least what follows and potentially more.'"). Similarly, claim 23 of the '442 patent recites, in part: "each of said file names having been determined, *at least in part*, by applying a function to the contents of the corresponding file"—making clear that each file name may not necessarily be determined by only the "contents of the corresponding file."

Moreover, Defendants' and IBM's proposed constructions add words not found in the claim language, *e.g.*, "computation" and "input," which introduces ambiguity to otherwise unambiguous claim language. With this ambiguity, Defendants' and IBM's proposed constructions will confuse rather than clarify the scope of the claims. *See L.C. Eldridge Sales Co. v. Azen Mfg. PTE*, 2013 U.S. Dist. LEXIS 73358, *16 (E.D. Tex. May 23, 2013) ("The Court

6

is not required to construe a term when doing so would result in a construction that would not add clarity to the claims."). For much the same reason, this Court found that a number of similar phrases require no construction (e.g., "distributing a set of data files across a network of servers.").[5] Accordingly, these phrases should not be construed.

### C. Licensed / unlicensed

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "licensed" / "unlicensed" | Plain and ordinary. No construction necessary. | Valid/invalid rights to access content. |
| Court's Prior Construction[6] | No construction necessary | |

No construction is necessary for the terms "licensed" and "unlicensed" because these terms have a plain and ordinary meaning readily understood by a jury. Claim 1 of the '442 patent is representative:

> In a system in which a plurality of files are distributed across a plurality of computers, a method comprising:
>
> obtaining a name for a data file, the name being based at least in part on a given function of the data, wherein the data used by the given function to determine the name comprises the contents of the data file; and
>
> in response to a request for the a data file, the request including at least the name of the particular file, causing a copy of the file to be provided from a given one of the plurality of computers, wherein a copy of the requested file is only provided to *licensed* parties.

'442, Claim 1 (emphasis added). Similarly, claim 7 of the '442 patent recites in part: "wherein a copy of the requested file is not provided to unlicensed parties or to unauthorized parties." Thus, "licensed" and "unlicensed" as claimed in the '442 patent are plain without lending themselves to any ambiguity, and furthermore, the specification does not express or imply a narrower interpretation. *L.C. Eldridge Sales Co.*, 2013 U.S. Dist. LEXIS 73358, *16 ("If the claim

---

[5] *See* Lee Decl., Ex. F, 2013 08 05 *Markman* Order at 28.
[6] *See* Lee Decl., Ex. F, 2013 08 05 *Markman* Order at 26.

language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified.") (internal quotation marks and citation omitted). This Court reached the same conclusion when previously considering these terms. *See* Lee Decl., Ex. F, 2013 08 05 *Markman* Order at 26.

Defendants offer no reason to depart from this Court's prior decision. Defendants' proposed construction remains confusing because it is superfluous and suffers from internal redundancy. For example, a user may or may not have access to content based on whether the user is "licensed." *See* '791, 12:6-7 ("licensee - identity of a user authorized to have access to this object."). As such, a user is "licensed" or "unlicensed" depending on whether the user has access to content—not depending on whether the user has superfluous "valid/invalid rights" as Defendants propose. Indeed, the specification speaks of licenses and access to content without mentioning valid/invalid rights. *See id.*, 11:63-65 ("Each record 150 of the license table 136 records a relationship between a licensable data item and the user licensed to have access to it."); *see also id.*, 12:6-7 ("licensee - identity of a user authorized to have access to this object."). Hence, Defendants' proposed construction does not add clarity to what is already unambiguous claim language, and as a result, the Court should adopt PersonalWeb's construction. *See L.C. Eldridge Sales Co.*, 2013 U.S. Dist. LEXIS 73358, *16; *see also* Lee Decl., Ex. F, 2013 08 05 *Markman* Order at 26 ("'Licensed' and 'unlicensed' require no further construction.").

### D.     Authorized / unauthorized / authorization

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "Authorized" / "unauthorized" / "authorization" | Plain and ordinary. No construction necessary. | Compliant/non-compliant/compliance with a valid license. |

No construction is necessary for the terms "authorized," "unauthorized," and "authorization." These terms are used in the same patents in a manner comparable to the

8

"licensed" and "unlicensed" terms. Like "licensed" and "unlicensed," these terms have a plain and ordinary meaning readily understood by a jury. Accordingly, no construction is needed.

> Claim 7 of the '442 patent is representative of how the patent claims use these terms:
>
> A method, in a system in which a plurality of files are distributed across a plurality of computers, wherein some of the computers communicate with each other using a TCP/IP communication protocol, the method comprising:
>
> obtaining a name for a data file, the contents of said data file representing a digital image, the name having been determined using at least a given function of the data in the data file, wherein the data used by the given function to determine the name comprises the contents of the data file; and
>
> in response to a request for the data file, the request including at least the name of the data file, providing a copy of the file from a given one of the plurality of computers, wherein a copy of the requested file is not provided to unlicensed parties or to *unauthorized* parties.

'442, Claim 7 (emphasis added). Similarly, claim 1 of the '310 patent recites in part: "determining whether or not access to the particular data item is authorized." Claim 166 of the 20 patent likewise recites in part: "wherein the data item is not to be made available for access or provided without authorization." As used in these claims, "authorized," "unauthorized," and "authorization" are plain without any ambiguity. Nothing in the specification states or implies anything other than the plain and ordinary meaning for these terms.

Defendants' proposed construction consists of terms that are not found in the patent let alone the claims. For example, the patents do not use "compliant," "non-compliant," or "compliance." Nor is "valid license" used in the patents. Where the disputed terms are plain as they are here, introducing verbosity with words not found in the patents renders the claim language redundant, confusing, and potentially inaccurate. *See Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, 2012 U.S. Dist. LEXIS 109760, *26 (E.D. Tex. Aug. 6, 2012) ("[T]he 'example' of 'also known as data bits' in Plaintiff's proposed construction is

9

redundant and could be confusing and potentially inaccurate. This proposed example should therefore be omitted from the Court's construction."). Accordingly, Defendants' proposed construction should not be adopted and the Court should not separately construe these terms.

### E. File name

| Claim Term | PersonalWeb | IBM |
|---|---|---|
| "file name" | Plain and ordinary. No construction necessary. | Identifier derived only from the context of a file.<br><br>IBM contends that claim 23 of the '442 patent is indefinite as properly construed. |

No construction is necessary for "file name" as "file name" has a plain and ordinary meaning readily understood by a jury—quite simply, it is the name of a file. When the term "file name" is used in the claims, the surrounding claim language provides the complete context for how the name of the file is determined. But there is nothing inherently unclear or ambiguous about the term.

>Claim 23 of the '442 patent recites:
>
>>A method comprising:
>>
>>obtaining a list of *file names*, at least one *file name* for each of a plurality of files, each of said *file names* having been determined, at least in part, by applying a function to the contents of the corresponding file; and
>>
>>using at least said list to determine whether unauthorized or unlicensed copies of some of the plurality of data files are present on a particular computer.

'442, Claim 23 (emphases added). In this context, "file name" is used in its plain and ordinary sense as the name of a file. The surrounding language states how the file names were determined (*i.e.*, in part, by applying a function to the contents of the corresponding file). Nothing in the

specification expressly or impliedly suggests a use of "file name" in any way other than the name of a file.

Defendants propose to define "file name" by how it is made, not by what it is. Even then, Defendants' construction is incorrect because it would limit the definition of "file name" to only one way of creating the file name, whereas the claim language expressly allows for potentially many ways to create a file name. In limiting "file name" to only one way of creating the file name, Defendants further err by adding terms that are not found in the claim language. For example, claim 23 does not include "identifier," "derived," or "context." Where the disputed terms are plain as they are here, introducing verbosity with such words not found in the claim language renders the claim redundant, confusing, and potentially inaccurate. *See Lake Cherokee Hard Drive Techs., LLC*, 2012 U.S. Dist. LEXIS 109760, *26.

Defendants also suggest without explanation that use of the term "file name" renders the claim indefinite. It does not. Where the meaning of a term is apparent from the context in the claim language, it is not indefinite as a matter of law. *See Solocron Media, LLC v. Verizon Commc'ns Inc.*, 2015 U.S. Dist. LEXIS 26681, *89 (E.D. Tex. Mar. 4, 2015) ("That meaning is already apparent from the context of the claims and the plain meaning of the disputed terms. Defendants' indefiniteness argument is therefore hereby expressly rejected."). Here, "file name" as recited in claim 23 of the '442 patent "viewed in light of the specification . . ., inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). The '442 patent explains that "a database management system may group data records (data items) into tables and then group these tables into database files (collections). The complete address of any data record can then be specified

11

using the database file name, the table name, and the record number of that data record." '442, 1:46-47. The specification goes on to explain:

> Within a data processing system 100, the data may be organized to form a hierarchy of data storage elements, wherein lower level data storage elements are combined to form higher level elements. This hierarchy can consist of, for example, processors, file systems, regions, directories, data files, segments, and the like. For example, with reference to FIG. 2, the data items on a particular processor 102 may be organized or structured as a file system 116 which comprises regions 117, each of which comprises directories 118, each of which can contain other directories 118 or files 120. Each file 120 being made up of one or more data segments 122.
>
> In a typical data processing system, some or all of these elements can be named by users given certain implementation specific naming conventions, the name (or pathname) of an element being relative to a context. In the context of a data processing system 100, a pathname is fully specified by a processor name, a filesystem name, a sequence of zero or more directory names identifying nested directories, and a final file name.

'442, 5:25-43. Figure 2 illustrates this description:



Based on these descriptions in the specification, the "file name" is discernible to those skilled in the art, and accordingly, claim 23 is not indefinite. *See BMC Software, Inc. v. ServiceNow, Inc.*, 2015 U.S. Dist. LEXIS 106789, *64, 147-50, 156-57, 179-80 (E.D. Tex. Aug. 13, 2015) (referring to the specification and figures for discussions and examples showing with "reasonable certainty" to skilled artisans the scope of the invention at issue).

### F. Substantially unique value

| Claim Term | PersonalWeb | IBM |
|---|---|---|
| "Substantially unique value" | No construction necessary for "substantially unique value." To the extent the court determines that a construction of the phrase is needed, it should have the same meaning as "substantially unique identifier": An identity for a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes the identifier substantially unique. | An identity for a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes the identifier substantially unique. |

No construction is necessary for "substantially unique value" because this term has a plain and ordinary meaning readily understood by a jury. Claim 30 of the '442 patent recites: "A method as in claim 23 wherein the function produces a substantially unique value based on the data comprising the data file." This Court previously determined that "substantially unique" requires "no further construction," (Lee Decl., Ex. F, 2013 08 05 *Markman* Order at 15) and "value" is a term used in its ordinary sense. Thus, "substantially unique value" as claimed is plain without lending itself to any ambiguity, and the specification does not provide or imply a narrower interpretation. Introducing verbosity with words not found in the claim language as Defendants propose renders the claim redundant, confusing, and potentially inaccurate. *See Lake Cherokee Hard Drive Techs., LLC*, 2012 U.S. Dist. LEXIS 109760, *26.

Although PersonalWeb proposes that plain meaning controls here, if the Court were to construe this term, PersonalWeb alternatively proposes that "substantially unique value" mean "an identity for a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes the identifier substantially unique."

## CONCLUSION

In light of the foregoing, PersonalWeb respectfully requests that the Court adopt its claim constructions as outlined above.

Dated: January 22, 2016

Respectfully submitted,
*/s/ Lawrence M. Hadley*
**McKOOL SMITH, P.C.**
Samuel F. Baxter
*Lead Attorney*
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
McKool Smith, P.C.
104 East Houston Street, Suite 300
Marshall, Texas  75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

**McKOOL SMITH, P.C.**
Lawrence M. Hadley
California State Bar No. 157728
lhadley@mckoolsmith.com
Phillip J. Lee
California State Bar No. 263063
plee@mckoolsmith.com
865 South Figueroa Street, Suite 2900
Los Angeles, CA  90017
Telephone:  (213) 694-1200
Telecopier:  (213) 694-1234

**ATTORNEYS FOR PLAINTIFFS PERSONALWEB TECHNOLOGIES LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via e-mail on January 22, 2016.

                                           _/s/ Phillip Lee_
                                           Phillip Lee