**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC, | |
| Plaintiffs, | |
| v. | Civil Action No. 6:12-cv-00659-JRG |
| RACKSPACE US, INC., ET AL. | JURY TRIAL DEMANDED |
| Defendants. | |
| PERSONALWEB TECHNOLOGIES, LLC. AND LEVEL 3 COMMUNICATIONS, LLC, | |
| Plaintiffs, | |
| v. | Civil Action No. 6:12-cv-00661-JRG |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant. | JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**<u>TABLE OF CONTENTS</u>**

**Page**

Table of Authorities ............................................................................................... ii

I.      INTRODUCTION ...................................................................................... 1

II.     CLAIM CONSTRUCTION......................................................................... 2

      A.      "Data Item" ......................................................................................... 2

            1.   A "Data Item" is Independent of Contextual Information................................2

            2.   PersonalWeb Interprets "Data Item" to Include Context...................................4

            3.   The Prior Markman Process Did Not Consider Contextual Information, Nor Did Judge Davis Have the Benefit of PersonalWeb's Arguments During the '791 Patent IPR ...............................................................6

            4.   PersonalWeb's Construction Is Contrary to the Specification, Including Preferred Embodiments ...................................................................7

            5.   PersonalWeb's Construction Seeks to Recapture the Prior Art.......................8

      B.      "Function" Phrases............................................................................. 10

      C.      "Licensed" Terms .............................................................................. 14

            1.   According to the Specification, Licensed Parties have Rights in Content ......14

            2.   PersonalWeb Seeks to Read the "Licensed" Terms out of the Claims............14

            3.   The Court Should Construe the "Licensed" Terms ........................................16

      D.      "Authorization" Terms....................................................................... 17

            1.   The Specification Describes "Authorization" in Terms of a Valid License....17

            2.   PersonalWeb Again Attempts to Read Limitations Out of the Claims ...........18

            3.   Defendants' Construction Does Not Introduce Confusion .............................19

      E.      "File Name" ........................................................................................ 20

            1.   A "File Name" Relies on Context, and Not Content ......................................20

            2.   The Proper Construction of "File Name" Renders Claims Indefinite ............21

      F.      "Substantially Unique Value"............................................................ 23

III.    CONCLUSION....................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
   707 F.3d 1318 (Fed. Cir. 2013) ...................................................................... 8, 15

*Allergan, Inc. v. Apotex Inc.*,
   754 F.3d 952 (Fed. Cir. 2014) ............................................................................ 5

*Alloc, Inc. v. Int'l Trade Comm'n*,
   342 F.3d 1361 (Fed. Cir. 2003) ........................................................................ 12

*BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*,
   519 F. App'x 1008 (Fed. Cir. 2013) ................................................................. 13

*Columbia University v. Symantec Corp.*,
   __ F.3d __, 2016 WL 386068 (Fed. Cir. 2016). ......................................... 22, 23

*In re Abbott Diabetes Care Inc.*,
   696 F.3d 1142 (Fed. Cir. 2012) ........................................................................ 12

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) .......................................................................... 8

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014) ........................................................................ 23

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
   2012 U.S. Dist. LEXIS 109760 (E.D. Tex. Aug. 6, 2012) ............................... 19

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005) .................................................................... 8, 12

*Maurice Mitchell Innovations,*
   *L.P. v. Intel Corp.*, 2006 WL 1751779 (E.D. Tex. June 21, 2006 ...................... 6

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004) ........................................................................ 16

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ...................................................................................... 22

*NTP, Inc. v. Research In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ........................................................................ 11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) .......................................................................... 1

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
   497 F.3d 1262 (Fed. Cir. 2007) .......................................................................... 8

*Saffran v. Johnson & Johnson*,
   712 F.3d 549 (Fed. Cir. 2013) ........................................................................ 6, 9

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) ................................................................................................. 12

*SightSound Techs., LLC v. Apple Inc.*,
   2015 WL 8770164 (Fed. Cir. Dec. 15, 2015) .................................................................... 11, 12

*SkinMedica, Inc. v. Histogen Inc.*,
   727 F.3d 1187 (Fed. Cir. 2013) ................................................................................................. 5

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
   164 F.3d 1372 (Fed. Cir. 1998) ............................................................................................... 13

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ............................................................................................... 16

## I.    INTRODUCTION

The alleged invention described and claimed in PersonalWeb's "True Name" patents is a file system that identifies data not by subjective information, but rather based upon the data itself.  According to the patents, using only the data in the data item provides a unique identifier that is ideal for storage, retrieval, de-duplication and license enforcement.

PersonalWeb acknowledges that the "solution" provided by the inventors of the "True Name" patents was to "identify data in the system in a manner that is independent of subjective names (such as user-given file names, file locations, or other metadata) and instead is based on the data itself."  Pls.' Br. at 1.  Yet PersonalWeb's proposed constructions, or rationale for why certain terms do not require construction, are consistently at odds with its own statements and the undisputed scope of the alleged invention.  For example, the intrinsic record makes plain that the claims do not encompass identifying data items using contextual information such as user-provided metadata.  PersonalWeb should not be allowed to avoid this conclusion by asking the Court to refrain from construction of the disputed terms.

Because there are fundamental disputes regarding the scope of these claim elements, the Court is required to construe the elements to prevent the questions from being submitted to the jury.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1362–63 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").  In doing so, the Court should adopt the constructions proffered by Defendants, which are based solely on the intrinsic record, and follow the patents' explicit teaching and disclosure.

## II.    CLAIM CONSTRUCTION

### A.    "Data Item"

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "data item"<br>'280 patent, claim 1<br>'310 patent, claims 1, 2, 7, 8, 10, 11, 14, 16-19<br>'420 patent, claim 166 | Sequence of bits | A sequence of bits distinct from contextual information |

*1.    A "Data Item" is Independent of Contextual Information.*

The crux of the alleged invention is an identifier that "depends on all of the data in the data item and only on the data in the data item."  U.S. Patent No. 5,978,791 at 3:29-32, attached as Exhibit 1 (hereinafter "'791 patent").[1]  The True Names patents starkly contrast prior art data processing systems, in which "the names or identifiers provided to identify data items … are *always* defined relative to a specific context."  *Id.* at 1:65-2:3.[2]  In these prior art systems, the patents state that "there is no direct relationship between the data names and the data item.  The same data name in two different contexts may refer to different data items, and two different data names in the same context may refer to the same data item."  *Id.* at 2:11-16.

To overcome those problems with the prior art, the True Names patents utilize "a common and substantially unique identifier for a data item, using only the data in the data item and not relying on any sort of context."  *Id.* at 3:9-11.  As a result, "the identity of a data item is *independent* of its name, origin, location, address, or other information not derivable directly from the data, and depends only on the data itself."  *Id.* at 3:33-35.  This also allows the

---

[1] Although the '791 patent is no longer asserted, it is the parent application to all of the asserted patents.  Both PersonalWeb and Defendants cite to the '791 patent specification because it is identical to the specifications of all the asserted patents.  Pls.' Br. at 1 n.1.

[2] Emphasis is added unless otherwise noted.

invention to reduce multiple copies of the same file by identifying identical data items, and to determine whether two instances of a data item are the same. *Id.* at 3:12-20. Throughout the specifications' disclosure of each embodiment, "context" is always distinguished from the "data" in a "data item." *See, e.g.*, *id.* at 35:34-37 ("Since a data item is identified by the data in the item, *without regard for the context of the data,* the problems of inconsistent naming in a DP system are overcome.").

Relying on these same disclosures, PersonalWeb (through its counsel Mr. Joseph Rhoa) argued to the Patent Office during *inter partes* review of the '791 patent that a "data item" does not include contextual information such as file names, date, metadata and other properties:

> MR. RHOA: Yes, that is because, again, in the '791 patent they are talking about typical files where this metadata is not part of the file. It's not part of the data item.
>
> And, again, their expert said that in his deposition. He testified to that.
>
> In '791, this name, data and other properties, that's not part of the data item. Those are not bits in the data item.

Record of Oral Hearing, *EMC Corp. v. Personal Web Techs., LLC*, IPR2013-0082, Paper 82 at 115:7-15 (PTAB Apr. 15, 2014), attached as Exhibit 2 .

> MR. RHOA: The content of the data item are whatever is in the data item, whatever bits make up the data item, that's the contents of the data item.
>
> JUDGE CHANG: But he does say independent of the

name, date and properties of the data item. So --

        MR. RHOA: That's because those things are not
part of the data item. In the file that '791 was talking
about, these patents, those things are not part of the data.

*Id.* at 117:19-118:4.

PersonalWeb's statements before the PTAB echo the patentees' arguments made during the prosecution of the '791 patent, where the patentees specifically distinguished the allegedly inventive "identifier" from data outside the four corners of the underlying "data item":

        This invention relates to data processing systems and,
more particularly, to data processing systems wherein data items
are identified by substantially unique identifiers which depend
on all of the data in the data items and only on the data in the
data items.

                              * * *

        So, for example, if the data item is a file in a file
system (and even if the file has some other identifying name),
the identity means determines the unique identifier for that file
based on all of the data in the file and only on the data in that
file. No other data is used to determine the unique identifier.
File names or data from other files are not used.

'791 File History, Amendment Under 37 C.F.R. 1.115 dated Mar. 12, 1997 at PWEB 000737-38 (underlining in original), attached as Exhibit 3.

        2.    *PersonalWeb Interprets "Data Item" to Include Context.*

        Despite the repeated and critical distinction between "context" and a "data item" found in the intrinsic record, PersonalWeb now contends that the proper construction is simply "sequence

of bits" because, according to PersonalWeb, the inventors acted as their own lexicographers.  Pls.' Br. at 3.

There is a problem with PersonalWeb's argument, however:  a patentee's attempt to act as his own lexicographer cannot be read in a vacuum.  Instead, it must be read in light of the entire specification.  *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014).  Here, while the patentees may have used the phrase "sequence of bits" to refer to a "data item," the specification explicitly limits what kind of "bits" fall within the scope of a "data item." *E.g.*, '791 patent at 3:9-11, 35:34-37.  As PersonalWeb also explained to the PTAB, a name, metadata and other properties are not part of the "data item" because "those are *not bits in the data item*."  Ex. 2 at 115:13-15.  No one disputes that data is comprised of bits.  The critical distinction the specification makes, and that PersonalWeb now ignores, is that only certain bits (content) make up a "data item" while other bits (context) are expressly left out.  A construction of "sequence of bits" would entirely gloss over this key point.

Relatedly, the specification may define claim terms not only expressly, but also by implication.  *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1196 (Fed. Cir. 2013).  In *SkinMedica*, the parties sought to construe the term "culturing … cells in three-dimensions."  *Id*. The specification was clear, however, that culturing cells in three dimensions on beads was already known in the art.  *Id.*  Relying upon the entirety of the specification, the Federal Circuit found that the repeated disclosure of culturing with beads as distinct from culturing in three-dimensions amounted to an implicit definition which excluded culturing on beads.  *Id.* at 1203-1204.  Like *SkinMedica*, the inventors of the True Names patents repeatedly and expressly distinguish *context* from "data item" throughout the common specification.  *See, e.g.*, '791 patent at  1:65-3:35,  8:19-34,  14:40-50,  28:46-49,  31:58-63,  32:49-33:47,  35:29-37,  38:33-40.

PersonalWeb made the same representations before the Patent Office, *e.g.*, Ex. 2 at 115:7-15, 117:19-118:4, and is not now permitted to sing a different tune.  *See*, *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) ("[U]nqualified assertion that 'the device used is a sheet' extends beyond illuminating how the inventor understood the invention . . . to provide an affirmative definition for the disputed term.").

Even if the inventors here acted as their own lexicographers, the correct construction for "data item" is not merely "sequence of bits."

> 3.  *The Prior Markman Process Did Not Consider Contextual Information, Nor Did Judge Davis Have the Benefit of PersonalWeb's Arguments During the '791 Patent IPR.*

When Judge Davis considered the term "data item" in a prior *Markman* process not involving GitHub or IBM, no party raised the issue of whether contextual information may be part of a "data item."  Instead, the only question before Judge Davis was whether the construction of "data item" should include a non-exhaustive list of examples.  Dkt. 85-7 at 8-9. As a result, departing from that prior construction to recognize the full definition provided by the specification is appropriate because the "parties here are advancing arguments and disagreements that [were] not . . . highlighted before" Judge Davis.  *See Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 2006 WL 1751779, at *7 (E.D. Tex. June 21, 2006) (Davis, J.) (*stare decisis* not applicable to prior *Markman* order absent final appealed order, and departure from prior construction was appropriate in light of new arguments not before previous judge).

It is also notable that critical PersonalWeb representations made before the PTAB during the '791 IPR occurred *after* Judge Davis' ruling.  As detailed above in Section II.A.1, PersonalWeb made clear to the PTAB what a "data item" is and, more importantly, what a "data item" is not.  *See, e.g.*, Ex. 2 at 115:7-15, 117:19-118:4.  Judge Davis did not have the benefit of those statements during the prior *Markman* process.

4.      *PersonalWeb's Construction Is Contrary to the Specification, Including Preferred Embodiments.*

The True Name patents repeatedly describe the alleged invention as encompassing an identifier generated using "all of the data in the data item and only [] the data in the data item." *See* '791 patent at 3:29-32; *see also id.* at 3:33-35 ("Thus the identity of a data item is *independent* of its name, origin, location, address, or other information not derivable directly from the data, and depends only on the data itself.").  This is also how the patentees described the invention to the Patent Office.  '791 File History, August 29, 1997 Amendment Under 37 C.F.R. 1.116 at PWEB 000771 ("But if something other than the data item changes (e.g., if some data in another data item changes or *if a file name of the data item or of another data item changes), then the identifier should not change*"), attached as Exhibit 4.  If contextual information, such as a file name or path name, is included in the "data item," then when True Names are created using all of the data and only the data in the data item, those True Names will change based on the contextual information.  The patentees' descriptions of the inventions in the specification and during prosecution would not be true if the "data item" itself could include contextual information.

The interpretation of "data item" proposed by PersonalWeb would not only run afoul of the explicit teachings of the specification, it would also read out preferred embodiments.  For example, the de-duplication preferred embodiment would be impossible because otherwise identical files stored in different locations would have different True Names.  *See* '791 patent at 3:10-15, 14:40-50 ("Thereby the system stores at most one copy of any data item or file by content, even when multiple names refer to the same content.").  Similarly, unauthorized parties could circumvent the licensing and authorization preferred embodiments simply by renaming their unlicensed files.  *Id.* at 3:15-20, 35:29-37 ("[T]he system can keep track of data items

regardless of how those items are named by users."), 38:33-40 ("[T]he system tracks possession of specific data items according to content by owner, independent of the name, date, or other properties of the data item.").   These effects underscore why "data item" should not be interpreted to include contextual information.  *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.") (internal quotations and citation omitted); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("There is a strong presumption against a claim construction that excludes a disclosed embodiment.").

            5.      *PersonalWeb's Construction Seeks to Recapture the Prior Art.*

        PersonalWeb's proposed construction—"sequence of bits"—not only ignores the critical distinction between the "data item" and context, but it also impermissibly encompasses the prior art and claim scope that PersonalWeb disclaimed as not being its invention.

        PersonalWeb argues that "contextual information is made up of bit sequences," and can therefore be a "data item."  Pls.' Br. at 5.  But if a data item is allowed to include its own contextual information, then the description of the alleged invention, and the distinction drawn between the alleged invention and the prior art, would become meaningless, and would undo the distinction made by the True Name patents and PersonalWeb between the alleged invention and the prior art.  *E.g.*, '791 patent at 1:65-2:3, 2:11-16, 3:9-20, 3:33-35; Ex. 2 at 115:7-15, 117:22-118:4.  This is improper.  *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1270-71 (Fed. Cir. 2007) (where specification repeatedly emphasized "pushing force" attribute of invention as distinguished from "pulling force" in prior art, "pulling force" was disclaimed); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1343–44 (Fed. Cir. 2005) ("[I]t would be peculiar for the claims to cover prior art that suffers from precisely the same problems that the

8

specification focuses on solving."); *Saffran*, 712 F.3d at 559 (patent owner cannot recapture claim scope corresponding to a ground upon which prior art was distinguished) .

PersonalWeb cannot reconcile its proposed construction in view of the prior art by arguing that the specification refers to "context" only when naming or identifying "data items," and not in defining "data items" themselves. Pls.' Br. at 4-5. This argument is nonsensical. The data used to generate the identifiers described in the True Names patents defines the resulting identifiers.  In other words, the data that goes in entirely determines the identifier that comes out. That is why the parties agreed to define the term "data identifier" by reference to how the identifier is generated "by *processing all of the data in the data item, and only the data in the data item, through an algorithm* that makes the identifier substantially unique."  Joint Claim Construction and Pre-Hearing Statement, Exhibit A, Dkt. No. 78-1 (Nov. 18, 2015).

The focus on the content of a "data item" is also stated in the patentees' own depiction of the "present invention" when attempting to argue around the prior art (Gramlich) during prosecution of the '791 patent:

> A summary of the differences between Gramlich and the present invention can be seen with reference to the attached Figures A and B.  As can be seen from Figure A which shows the naming operation of the present invention, a data item **A-1** is given a name (true name) **A-2** by passing the data item through a function **MD**, where **MD** uses all of the data in data item **A-1** and only the data in data item **A-1** to determine the name **A-2**.

> \* \* \*

Appln. of Farber et al



**Figure A**

Ex. 3 at PWEB 000749, PWEB 000751.

The intrinsic record is replete with contrast between a "data item" and the context associated with a "data item."  *See, e.g.*, '791 patent at 3:9-11 (the claimed invention covers generating an identifier "using only the data in the data item *and not relying on any sort of context*.").  PersonalWeb cannot recapture now what it abandoned before.  The interpretation of "data item" cannot include context.

**B.     "Function" Phrases**

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "Given function of the data [in the data item / data file]"<br><br>'280 claim 1;<br>'442 claims 1 & 7 | Plain and ordinary.  No construction necessary. | Computation where the input is all of the data in the [data file / data item], and only the data in the [data file / data item]. |
| "Applying a function to the contents of the corresponding file"<br><br>'442 claim 23 | Plain and ordinary.  No construction necessary. | Performing a computation where the input is all of the data in the file, and only the data in the file. |

The alleged distinguishing feature of the claimed invention is that "the identity of a data item is independent of its name, origin, location, address, or other information *not derivable directly from the data, and depends only on the data itself*."  '791 patent at 3:27-55; *see also supra* discussion II.A.1.

10

This identity of the data item is not a preexisting thing.  It is "computed using a function" that reduces the data "to a relatively small, fixed size identifier."  *Id.* at 12:54-60; *see also id.* at 14:6-12 ("To determine the True Name . . . first compute the MD function (described above) on the given simple data item (Step S212).")  In the claimed invention, a function computes the data item's identifier from the data in the data item and only the data in the data item.  This is what the phrase "given function of the data" means in claim 1 of the '280 patent and claims 1 and 7 of the '442 patent, and what is referenced by the phrase "applying a function to the contents of the corresponding file" in claim 23 of the '442 patent.[3]

The language of the claims supports this interpretation.  In the '280 patent, claim 1 specifies that "the data identifier being determined using a given function of the data."  The parties agree that "data identifier" refers to "[a]n identity for a data item generated by processing all of the data in the data item, and only the data in the data item, *through an algorithm* that makes the identifier substantially unique."  Dkt No. 78-1.  As the "given function" determines the data identifier, the claim itself requires the "given function" to operate on all of the data in the data item and only the data in the data item.[4]

The specification common to both patents confirms that the input to the function is only the data in the data item.  Again, the specification disparages prior art that identified data using

---

[3] Nothing in Defendants' proposed construction is ambiguous.  The words "computation" and "input" are more readily understood to a juror than the concept of "function."

[4] In the '442 patent, claims 1 and 7 use the same "given function of the data" language reciting that "the name being based at least in part on a given function of the data."  Because the '280 patent and the '442 patent derive from the same parent application, the Court should interpret the claim terms common to these two patents—including the "given function" phrase—consistently. *E.g., SightSound Techs., LLC v. Apple Inc.*, 2015 WL 8770164, at *6 (Fed. Cir. Dec. 15, 2015); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) (abrogated on other grounds, *see IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1361 n.1 (Fed. Cir. 2014)).  And claim 23's language of "applying a function" should be interpreted to refer to the same "function" referenced in claims 1 and 7.

contextual information and distinguishes the claimed invention as determining the identity of a data item "using only the data in the data item and not relying on any sort of context."  *Id.* at 3:6-11; *see also id.* at 1:13-18, 3:12-20, 3:27-55.  No embodiment exists where the identifier for a data item is generated using contextual information.

The claims should not, as a result, be interpreted to cover a "function" that uses contextual information to generate a data item's identifier.  *SightSound Techs*., 2015 WL 8770164, at *7 ("The disadvantages identified by the specification of records, tapes, and CDs amount to implied disclaimer of those three media.").  In fact, it would be "be peculiar for the claims to cover prior art that suffers from precisely the same problems that the specification focuses on solving." *LizardTech,* 424 F.3d at 1343–44.  This is true even if the language of the claim taken alone could be interpreted to be broader.  *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1341–45 (Fed. Cir. 2001) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."); *see also In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1149 (Fed. Cir. 2012); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1369–70 (Fed. Cir. 2003).

The prosecution history confirms that the claimed "function" refers to computations based on only the data and not on contextual information.  For example, in prosecuting the '280 patent, the patentees specified that the "given function" produces a "True Name," which refers to an identifier "generated by *processing all of the data in the data item, and only the data* in the data item, *through an algorithm* that makes the identifier substantially unique."  '280 File History, Response to Office Action dated August 22, 2011 at PWEB 001075 (emphasis on "only

the data" in original), attached as Exhibit 5; *see also id.* at PWEB 001074; Dkt. 85-7 at 47. Similarly, in the prosecution of the '791 patent, the patentees distinguished Gramlich because that reference *"does not determine the name of the data item using only the data in the data item,"* and because "unlike the unique identifiers of the present invention, the composition of Gramlich's database component file name is … a *function of data not in the database component file* (*i.e.*, the source file name and the data in the source file)."  Ex. 4 at PWEB 000775; Ex. 3 at PWEB 000741.

In response to Defendants' position, PersonalWeb puts significant weight on the fact that claim 1 of the '280 patent recites that "data used by the given function to determine the data identifier *comprises* the contents of the particular data."  Pls.' Br. at 6 (emphasis in original). But the word "comprises" does not permit PersonalWeb to broaden the claims' scope beyond the other language of the claim or the specification's disclosure.  As the Federal Circuit put it, "'[c]omprising' is not a weasel word with which to abrogate patent claim limitations." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998) (holding use of "comprising" did not allow patent scope to include embodiment in the prior art); *see also BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, 519 F. App'x 1008, 1017 (Fed. Cir. 2013).

Similarly, the use of "at least" in claim 23 of the '442 patent offers no support to PersonalWeb's position that the claimed "function" can operate on contextual information.  That claim provides that "each of said file names" have "been determined, at least in part, by applying a function to the contents of the corresponding file."  The "at least" language says nothing about what data is used by the "given function."  It instead permits the name for a file to be determined based on the result from the function as well as something else, such as another function of the data in the data item.  For example, in the preferred embodiment, the True Name includes not

13

only the result from a message digest function applied to all of the data but also the "byte length modulo 32" derived from the data.  '791 patent at 14:6-12.

The specification and all other intrinsic evidence (including the claim language) require that the function used to determine a True Name is computed from "all of the data in the data item, and only the data in the data item."

### C.     "Licensed" Terms

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "licensed"<br><br>'442 patent, claim 1 | Plain and ordinary.  No construction necessary. | Valid rights to access content |
| "unlicensed"<br><br>'442 patent, claims 7, 23 | Plain and ordinary.  No construction necessary. | Invalid rights to access content |

### 1.     *According to the Specification, Licensed Parties have Rights in Content*.

One of the advantages of the alleged invention is that it can provide "proof of possession of specific files according to their *contents*."  '791 patent at 32:19-22.  To this end, the specification describes a mechanism which "ensures that licensed files are not used by unauthorized parties." *Id*. at 32:18-19.  The license links a user with a given data item, and is not dependent on the location of the content.  *Id.* at 8:51-54, 11:63-12:7.  The specification includes an embodiment for "enforcing use of *valid* licenses" and such "license *validation*" can be performed by auditing user systems using the True Names of licensed files.  *Id.* at 32:23-48.  In view of the specification, a party is "licensed" when it has a valid right to access content, and is "unlicensed" when it does not.

### 2.     *PersonalWeb Seeks to Read the "Licensed" Terms out of the Claims*.

According to PersonalWeb, "a user is 'licensed' or 'unlicensed' depending on whether the user has access to content."  Pls.' Br. at 8.  "Refusing to provide access to a file" is one way

in which the specification discloses that a "license" can be enforced, *see* '791 patent at 32:23-26, and so as disclosed in the specification "access" should be determined by whether or not a user is "licensed" or "unlicensed."   PersonalWeb's interpretation inverts this relationship and makes "licensed" and "unlicensed" dependent on access.  This interpretation conflicts with the intrinsic record because it presumes that any and every user with access to a file has a license, and ultimately leads to contradictory results in the asserted claims.  For example, claim 1 of the '442 patent requires that "a copy of the requested file is only provided to licensed parties."  '442 Patent, Dkt. 85-3 at 39:50-52.  If, as PersonalWeb argues, "a user is 'licensed' or 'unlicensed' depending on whether the user has access to content," then the term "licensed" is effectively read out of claim 1: a copy of the file is provided to any user who already has access to it.  As a further example, claim 23 requires a *determination* of "whether unauthorized or unlicensed copies of some of the plurality of data files are present on a particular computer."  But if a user's computer already has a copy of the file, according to PersonalWeb, the file is already licensed, so no determination would be required.

PersonalWeb's over-broad interpretation also reads out the only embodiment of the specification which mentions a license.  *Accent Packaging*, 707 F.3d at 1326 ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.") (internal quotations and citation omitted).  According to this sole embodiment, whether or not a user is licensed to use a file is independent of the file's location, *i.e.*, it does not depend on whether a user has access to the file.  '791 patent at 8:51-54, 11:63-12:7.  Instead, the specification explains that enforcement of a "license" can be either active, by refusing access to a file without authorization, or passive by creating a report of users who have access to the file without authorization.  *Id.* at 32:23-26.  For example, the specification describes a process in

which a user's computers are scanned to determine if they already contain a file for which they do not have a license and which they are not authorized to have. *Id.* at 32:27-48.  If a user's computer does contain a file that it is not authorized to have, it is recorded in a "license violation table." *Id.* at 32:46-48.  Under PersonalWeb's interpretation, however, a license violation would be impossible because every file a user can access would already be "licensed."

Indeed, the patentees themselves argued that a "license" represents rights to use a file *separate from* the ability to access the file itself.  During prosecution of the '442 and '420 patents, the patentees contended that the prior art did not disclose that "a copy of the requested file is only provided to *licensed* parties" because the prior art system freely provided access to software and sold the authorization rights separately. *See* '442 Re-Examination File History, Response to First Office Action dated July 30, 2009 at PWEB 115608-10, attached as Exhibit 6.  The patentees also contended that technical limitations on access, such as available bandwidth, do not "teach or in any way suggest[] selectively denying a request for a file based on any authorization … or based on whether or not the requesting party is licensed."  '420 File History, Response to Office Action dated Feb. 14, 2010  at PWEB 156228, attached as Exhibit 7.[5]

The record shows, then, that the definition of the term "license" does not merely depend on whether or not a party has access to the data, but whether a party has a *right* to access the data.

3.    *The Court Should Construe the "Licensed" Terms.*

Although Judge Davis previously declined to construe these terms, the Court's prior *Markman* process focused on different issues.  Specifically, the court was asked to address two

---

[5] Statements made during prosecution are relevant not only to the prosecution in which they were made, but to related patents sharing a common specification, even when the statements were made after the related patent issued. *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349-50 (Fed. Cir. 2004); *see also Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307 (Fed. Cir. 2007).

questions, neither of which is at issue here:  (i) whether the license must be to the content of a file *or* to the system as a whole; and (ii) whether the licensed file must actually be *requested*. Dkt. 85-7 at 25-26.  In response to the first question, the court determined that there was no need to answer it, as all of the claims at issue reference a license to a file, not a system.  *Id.*; *see, e.g.*, Dkt. 85-3, '442 patent claim 1 ("wherein a copy of the requested file is only provided to licensed parties"), claim 7 ("wherein a copy of the requested file is not provided to unlicensed parties or to unauthorized parties").  In response to the second question, the court held that the licensed file need not be requested.

The  dispute  presented  here  was  not  raised  before  or  addressed  by  Judge  Davis. Construction of the terms is necessary now to avoid confusion over whether the term "license" can be read synonymously with "access."

###    D.      "Authorization" Terms

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "authorized"<br>'310 patent, claims 1, 2, 16-19 | Plain and ordinary.  No construction necessary. | Compliant with a valid license |
| "unauthorized"<br>'442 patent, claims 7, 23 | Plain and ordinary.  No construction necessary. | Non-compliant with a valid license |
| "authorization"<br>'420 patent, claim 166 | Plain and ordinary.  No construction necessary. | Compliance with a valid license |

####        1.      *The Specification Describes "Authorization" in Terms of a Valid License.*

PersonalWeb is correct that the terms "authorized," "unauthorized," and "authorization" are used in a manner comparable to the "licensed" and "unlicensed" terms.  Pls.' Br. at 8-9. Throughout the specification, the term "authorization" is based on whether use or access to content complies with a user's "license" rights, or lack thereof.  For example, a "licensee" is the "identity of a user authorized to have access to this object."  '791 patent at 12:4-7.  The "enforcing use of *valid licenses*" is accomplished either "by refusing to provide access to a file

without authorization" or "by creating a report of users who do not have proper authorization." *Id.* at 32:23-26.[6]  With successful enforcement of the licenses by these disclosed mechanisms, all use of licensed content will comply with a valid license such that "licensed files are not used by unauthorized parties."  *Id.* at 32:18-19.  Hence a copy of a file or access to content is "authorized" depending on whether or not the copy or access complies with a license.

> 2.     *PersonalWeb Again Attempts to Read Limitations Out of the Claims.*

PersonalWeb's argument that "authorized" is as simple as "whether the user has access to content" is squarely contradicted by the intrinsic record.  Specifically, PersonalWeb told the patent office *multiple* times that "whether access to a data item is *authorized* is NOT met by a file access system that simply accesses files via names."  Patent Owner's Preliminary Response, *Apple, Inc. v. PersonalWeb Techs., LLC*, IPR2013-00596, Paper 8 at 18, 28-29, 40-41 (PTAB Dec. 26, 2013) (emphasis in original), attached as Exhibit 8; Patent Owner's Response, *Apple, Inc. v. PersonalWeb Techs., LLC*, IPR2013-00596, Paper 15 at 38 (PTAB June 16, 2014) (emphasis in original), attached as Exhibit 9.[7]  PersonalWeb also repeatedly stated that "a file access system that accesses data items is *not* the same as a system that determines whether such access is 'authorized'/'not authorized,'" and that the ability or inability to locate a file does not mean a determination has been made that access is authorized.  *Id.*  PersonalWeb made similar arguments with respect to the "authorization" and "licensing" terms during prosecution of the '442 and '420 Patents:

---

[6] PersonalWeb's assertion that the term "valid license" is not used in the patents is incorrect.  *Cf.* Pls.' Br. at 8.

[7]  IPR2013-00596 is currently the subject of an appeal to the Federal Circuit, wherein PersonalWeb specifically requested an extension so that it's brief would not be due until after the *Markman* hearing in this case.  *Personal Web Techs., LLC v. Apple, Inc.*, 16-1174, Dkt. No. 11 (Fed. Cir. Dec. 7, 2015), attached as Exhibit 10.   Defendants reserve the right to submit supplemental evidence should PersonalWeb further contradict its claim construction arguments in its appellate brief.

> This is the case because the *authorization to use the software is sold and obtained separately from the software itself.*  So Hellman does not and cannot teach a method as recited in claim 1 in which 'a copy of the requested file is only provided to licensed parties.'  In Hellman's system software becomes authorized or licensed after it has been obtained."

*See* Ex. 6 at PWEB 115608, '420 File History, Response to Non-Final Office Action dated May 19, 2009, at PWEB 156335, attached as Exhibit 11; *see also* Ex. 7 at PWEB 156228 ("As noted, in Hellman the user already has the file and is merely requesting <u>authorization to use</u> that file.") (emphasis in original).

PersonalWeb further stated with respect to the '420 patent that not only is "authorization" an additional limitation beyond mere permission to access or provide data, but that "authorization" is based on whether or not a content-dependent identifier exists in a database. Patent Owner's Response, *Rackspace US, Inc. v. PersonalWeb Techs., LLC*, IPR2014-00058, Paper 19 at 4-5, 8-9, 12-13 (PTAB July 15, 2014), attached as Exhibit 12.  The only such database disclosed in the True Names patents is the "license table," which links a licensee authorized to have access to a particular object and the True Name of a data item subject to license validation. '791 patent at 11:63-12:7.

### 3.     *Defendants' Construction Does Not Introduce Confusion.*

PersonalWeb relies on *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.* to claim that Defendants' construction introduces confusion.  2012 U.S. Dist. LEXIS 109760, *26 (E.D. Tex. Aug. 6, 2012).  In that case, however, the court merely found that a redundant example should be omitted from a construction where the construction itself was otherwise clear. *Id.* at *27 (construing "binary data" to mean "data that has two possible states (for example, 0 or 1)" but omitting the further, redundant example "also known as data bits").  Here, Defendants' construction seeks to clarify that authorization requires more than mere "access," and instead

requires compliance with a valid license; this construction comports with the specification and prosecution history.

### E.    "File Name"

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "file name"<br><br>'442 patent, claim 23 | Plain and ordinary.  No construction necessary. | Identifier derived from the context of a file.<br><br>Defendants contend that claims 23, 27, 28 and 30 of the '442 patent are indefinite as properly construed. |

*1.    A "File Name" Relies on Context, and Not Content.*

Unlike the other identifiers for a file described by the specification, a "file name" is not dependent on the data in the data item (*i.e.*, content), but rather on its context.  Defendants' proposed construction of "file name"—an "identifier derived from the context of a file"—is consistent with the intrinsic record.  The specification explains that in all prior data processing systems, "the names or identifiers provided to identify data items (the data items being files, directories, records in the database, objects in object-oriented programming, locations in memory or on a physical device, or the like) are always defined relative of a specific *context*."  Dkt. 85-3, '442 patent at 1:66-2:4.  The specification elaborates by providing examples of identifiers determined from the context of a data item, such as a "file name," which identifies a file "only when the directory containing the file (the *context*) is known."  *Id*. at 2:4-6.

Importantly, on this point the specification explicitly distinguishes the alleged invention, where identifiers for a data item are determined from the content of a data item, "using only the data in the data item and *not relying on any sort of context*."  *Id*. at 3:10-12.  The specification further describes a "file name" as used in the present invention:  "In a typical data processing system, some or all of these elements can be named by users given certain implementation

specific naming conventions, the name (or pathname) of an element being *relative of a context*," an example of which is a "file name."  *Id*. at 5:36-44.

The prosecution history of the True Names patent family also supports Defendants' proposed construction.  Specifically, the patentees explained that the unique identifier for a file is "based on <u>all</u> of the data in the file and <u>only</u> on the data in that file … . *File names … are not used*" because they do not contain any data or contents of the file.  Ex. 3 at PWEB 000738 (underlined emphases in original).

Consistent with the intrinsic record, PersonalWeb admitted in its Opening Brief that a "file name" is derived from the *context* of a data item, rather than the content, when it described a "file name" as a user-given, subjective name that is *not* based on the data of a data item.  Pls.' Br. at 1, 12.  PersonalWeb further distinguished these types of identifiers from the "content-based identifiers" of the alleged invention, which are "generated by applying a function, such as a message digest or other complex hash function, to data in order to calculate a value that identifies that data for specific purposes within the system."  *Id*. at 2.

The record is clear:  a "file name" is an identifier derived only from the *context* of a file—*not* the contents.

         2.    *The Proper Construction of "File Name" Renders Claims Indefinite*.

Claim 23 of the '442 patent, however, recites a method in which "file names" are "determined, at least in part, by applying a function to the *contents* of the corresponding file." Dkt. 85-3, '442 patent at claim 23.  When the "file name" term is properly construed as an identifier derived from the *context* of a file, claim 23 of the '442 patent, as well as dependent claims 27, 28, and 30, are indefinite.

Patent claims are "invalid for indefiniteness if [the] claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable

certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  The policy rationale underlying the definiteness requirement is that a person of ordinary skill in the art should have "clear notice of what is claimed" so that the public can determine "what is still open to them" and avoid allegations of infringement.  *Id.* at 2129 (citations omitted).

Claim 23 provides no such clarity.  On one hand, the intrinsic record makes clear that a "file name" is derived only from the *context* of a file—yet on the other hand, claim 23 requires that the file name is derived from applying a function to the *contents* of a file.  Dependent claims 27, 28, and 30 do not remedy this conflict as they also indicate that the "file name" is derived from applying a function to the contents of a file and only specify what type of function is used (claims 27 and 28) or that the function produces a substantially unique value (claim 30).

This conflict is fundamental, and creates ambiguity such that the claims do not provide objective boundaries to those of ordinary skill in the art.  One of ordinary skill in the art cannot be reasonably certain of whether the claimed file name is derived from the context or the contents of a file in claims 23, 27, 28 and 30 of the '442 patent.  The Federal Circuit recently addressed an almost identical situation.  In *Columbia University v. Symantec Corp.*, the court affirmed a trial court's decision finding claims invalid as indefinite where the claim term "byte sequence feature" was construed to be a feature extracted from *machine code instructions*, as was disclosed in the specification.  __ F.3d __, 2016 WL 386068, at *6 (Fed. Cir. 2016).  The claims of the patent, however, stated that the "byte sequence feature" was extracted from something that does *not* have machine code instructions, in direct conflict with the specification and the construed meaning of the term.  *Id.*  The Federal Circuit affirmed the finding of indefiniteness, holding that "[t]he claims are nonsensical in the way a claim to extracting orange

juice from apples would be, and are thus indefinite." *Id.*   Just as in *Columbia University*, the specification and prosecution history of the asserted patents teach that a "file name" is created from the *context* of a file while claims 23, 27, 28, and 30 of the '442 patent state that a "file name" is created from the *contents* of a file.

The skilled artisan is left to "consult the unpredictable vagaries of any one person's opinion." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1369-70 (Fed. Cir. 2014).  "Such ambiguity falls within 'the innovation-discouraging "zone of uncertainty" against which [the Supreme Court] has warned.'" *Id.* at 1374 (citing *Nautilus*, 134 S. Ct. at 2130).  Because the person of ordinary skill in the art does not have "clear notice of what is claimed," and cannot be reasonably certain of the scope of these claims, the Court should find claims 23, 27, 28, and 30 invalid as indefinite.  *Nautilus*, 134 S. Ct. at 2124, 2129.

### F.    "Substantially Unique Value"

| Claim Term | PersonalWeb | Defendants |
|---|---|---|
| "substantially unique value" ('442 patent, claim 30) | No construction necessary for "substantially unique value." <br><br> To the extent the court determines that a construction of the phrase is needed, it should have the same meaning as "substantially unique identifier": <br><br> An identity for a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes the identifier substantially unique. | An identity for a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes the identifier substantially unique. |

PersonalWeb has no substantive disagreement with the construction proposed by Defendants, but merely disagrees that the term "substantially unique value" requires construction. But rather than address the term proposed by the parties—"substantially unique value"—

PersonalWeb instead creates a straw man by dividing the disputed term into two different terms: "substantially unique" and "value."  Having improperly removed the terms from the context of the claims, PersonalWeb then argues that neither of them requires construction.

Judge Davis' prior *Markman* order, which PersonalWeb attempts to rely on, demonstrates the flaw in this argument.  Specifically, the court criticized PersonalWeb's attempts to read the words "substantially unique" out of the claim term "substantially unique identifier."  Dkt. 85-7 at 15.  The court then proceeded to construe the term "substantially unique identifier," even though it declined to separately construe the terms "substantially unique" (*id.* at 15-16) or "identifier" in isolation (*id.* at 19).  PersonalWeb cannot circumvent the construction of a claim limitation because it finds plain and ordinary meaning in its subpart terms.

The parties agree that "data identifier," "content-based name" and "digital identifier" are each properly construed in the precise manner that Defendants' propose "substantially unique value" should be construed here.  Declining to construe "substantially unique value" would lead to confusion because a fact-finder would conclude that the term must have some meaning other than the agreed-upon terms above, *i.e.,* something other than "an identity for a data item generated by processing all of the data in the data item, and only the data in the data item, through an algorithm that makes the identifier substantially unique."

## III.    CONCLUSION

The Court should adopt Defendants' proposed constructions as set forth in this brief, and find claims 23, 27, 28 and 30 of the '442 patent invalid as indefinite.

Dated:  February 5, 2016

Respectfully submitted,

| | |
|---|---|
| */s/ Kenneth R. Adamo* | */s/ Ryan M. Kent* |

Kenneth R. Adamo
Texas State Bar No. 00846960
kradamo@kirkland.com
Brent P. Ray
Illinois State Bar No. 6291911
bpray@kirkland.com
Ryan M. Hubbard
Illinois State Bar No. 6296777
ryan.hubbard@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle Dr.
Chicago, Illinois 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200


Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397


*Attorneys for Defendant IBM*

Ryan M. Kent
rkent@durietangri.com
Sonal Mehta
smehta@durietangri.com
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111-3007
(415) 362-6666

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON, P.C.
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
(903) 597-8311 (telephone)
(903) 593-0846 (facsimile)

*Attorney for Defendant GitHub, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 5th day of February, 2016.

*/s/ Kenneth R. Adamo*

Kenneth R. Adamo
